IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 5:19CR-4032 |
| Plaintiff, | ) | |
| | ) | **BRIEF IN SUPPORT OF** |
| vs. | ) | **MOTION TO SUPPRESS** |
| | ) | |
| DIEGO FELIPE JUAN, | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

The Defendant, Diego Felipe Juan, by and through his attorneys, Stuart J. Dornan and Kate O. Rahel, urges the Court sustain his Motion to Suppress for the reason that his interrogations, the search of his house, and the seizure of his belongings violated his constitutional rights as set forth below.

## II. BACKGROUND

On January 16, 2019, the Lyon County Attorney submitted an Application for Search Warrant seeking a search warrant for the person of Diego Felipe Juan and the residence at ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Iowa in order to seize items related to child pornography. The search warrant application was supported by an affidavit signed by Special Agent Jacob Burger of the Iowa Department of Public Safety, Division of Criminal Investigation. The Affidavit outlined Agent Burger's background investigating child exploitation crimes, the use of computers, how Facebook functions, and included a section on "Child Pornographer Characteristics." The Affidavit also outlined the investigation into Juan stating that Iowa officials had received a tip from Facebook which led them to investigate Juan as having uploaded a possible child pornography video.

Jenny Winterfeld, a magistrate judge of Iowa's Third Judicial District, issued a warrant on January 16, 2019. The warrant stated the probable cause existed to believe that "on the person of

Diego Felipe Juan and at the placed described as . . . the residence on the property of ▬▬▬▬▬▬▬▬▬▬▬" could be found images of child pornography and related items. The warrant authorized the seizure of such items and instructed law enforcement "to make immediate search of the described place (and person(s) and vehicle(s)) for the specified property," and to seize such property.

On January 18, 2019, officers executed the search warrant for ▬▬▬▬▬▬▬▬▬▬. Juan was at home during the search and officers informed him that they had a valid search warrant and that he was not under arrest. As a result of the search, officers seized an Apple iPad, an iPhone belonging to Juan, an iPhone belonging to Juan's wife, Catarina Pablo, and a Sony camera.

After the search, officers interviewed Juan. The interview occurred in Special Agent Jacob Burger's unmarked police vehicle, which was parked in the alley behind ▬▬▬▬▬▬▬▬. Agent Burger sat in the driver's seat, Juan sat in the passenger's seat, and Homeland Security Investigations Special Agent Ricardo Rocha sat in the rear middle back seat purportedly to serve as an interpreter. However, Agent Rocha did not interpret word-for-word between Juan and Agent Burger and only stepped in occasionally to provide interpretation.

Agent Burger began the interview by obtaining Juan's basic information such as his full name and phone number. He then told Juan that he was not under arrest and could leave when he wanted. Agent Burger had Agent Rocha interpret this statement directly to Juan. Juan stated he understood. Agent Burger then proceeded to ask Juan numerous questions regarding the video he had allegedly uploaded to Facebook and sent to another user. Agent Rocha did not interpret every question and answer between Juan and Agent Rocha. When Agent Rocha did interpret for Juan, he did not always perform a word-for-word interpretation, but sometimes summarized or used alternative words to convey Agent Burger's meaning. Several times, Juan indicated he did not

2

understand Agent Burger's questions in English, prompting Agent Rocha to interpret them for Juan. In one example of misinterpretation, Juan said of the video, "Se me bajó," which means literally "it downloaded itself to me" or, more colloquially, "it downloaded." Agent Rocha, however, interpreted this as "the video UPloaded." Following the conclusion of the interview, Juan was arrested by agents for possession of child pornography.

On May 9, 2019, Agent Burger transported Juan from the Lyon County Jail in Rock Rapids, Iowa, to the District Court for the Northern District of Iowa in Sioux City, Iowa for his first court appearance in the present case. Agent Burger initiated conversation with Juan by stating it was a nice day and asking if Juan was ok with the music playing on the radio. Agent Burger also asked Juan if he had eaten that day, to which Juan replied that he had. Thereafter, Juan started to make statements regarding the "problem" he was in. Agent Burger responded to Juan that "it'll be in the court's hands now." Juan stated that, with respect to the video, "people sent it to my Facebook." Agent Burger than proceeded to ask Juan questions about the video, including what video Juan had sent over Facebook, who had sent it to him originally, and whether Juan thinks they'll find the people who sent it. Agent Burger then stated that Juan does not have to talk to him if he does not want to. Agent Burger then continued asking Juan if he knew the people who had sent the video and if he knew who had added him to the group that caused him to receive the video as a message.

Juan has filed a motion seeking the suppression of the evidence obtained as a result of his two interviews and the search of his residence.

### III. ANALYSIS

#### A. Defendant's Statements

3

Case 5:19-cr-04032-LTS-KEM   Document 19-1   Filed 07/05/19   Page 3 of 9

Both interviews of Juan violated the Fifth Amendment because he was subject to custodial interrogation without being advised of his rights under *Miranda v. Arizona*, 348 U.S. 436 (1966).

The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement after being taken into custody. *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012). Six factors are relevant to the analysis, although the factors are not exhaustive and need not be applied "ritualistically" in every case: (1) Whether the suspect was informed that questioning was voluntary and he was free to leave, (2) whether the suspect possess freedom of movement during questioning, (3) whether the suspect initiated contact with authorities or acquiesced in response to questions, (4) whether strong arm tactics were employed, (5) whether the atmosphere was police-dominated, and (6) whether the suspect was placed under arrest at the time of questioning. *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

Interrogation under *Miranda* includes not only express questioning but also its functional equivalent, such as any word or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005). In determining whether a person is "in custody" for *Miranda* purposes, the question is whether, under the totality of the circumstances, a reasonable person in the defendant's position would have felt "at liberty to terminate the interrogation and leave." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

Agent Burger's interview of Juan on January 18, 2019, violated the Fifth Amendment. The interview took place immediately after police had stormed and searched Juan's house, it took place in a police car with two agents, and officers failed to use accurate interpretation which resulted in Juan being confused during intense questioning. Courts have recognized that language barriers are

4

relevant in other contexts and the Court should consider how the lack of accurate interpretation impacted the voluntariness of Juan's statements here. *See United States v. Hernandez*, 893 F. Supp. 952, 961 (D. Kan. 1995) (analyzing whether a defendant's consent was freely given where he did not speak fluent English).

Despite the fact that the agents were undoubtedly interrogating Juan and that he was not free to leave due to being in a police vehicle with two agents asking him questions, Agent Burger did not read Juan his *Miranda* rights. Although Agent Burger told Juan he was free to leave and was not under arrest, no reasonable person in Juan's place would have felt that to be true, given the totality of the circumstances and the language barrier he faced.

Similarly, Agent Burger's interaction with Juan while transporting him in a police vehicle on May 9, 2019, violated Juan's Fifth Amendment rights. Agent Burger initiated the conversation with Juan but did not ask him substantive questions off the bat. However, once Juan volunteered one statement, Agent Burger began asking Juan specific questions about the offense, such as who had sent him the video and how he had obtained it, thereby transforming the interaction into a custodial interrogation. Agent Burger never read Juan his *Miranda* rights. At the time, Juan was in a moving police vehicle and was handcuffed in the backseat, unable to leave. The atmosphere was police-dominated, and Juan was subject to custodial interrogation. Agent Burger told Juan he did not have to say anything, but never advised Juan of the consequences of responding to questioning, such as its use against him, nor of his right to have an attorney or to stop the questioning.

Law enforcement was required to give Juan his *Miranda* warnings prior to these two custodial interrogations. *See United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012) Their failure to do so violated Juan's Fifth Amendment rights and requires suppression of all of the evidence obtained as a result of the interrogations.

5

## B. Search Warrant

The search and seizure of Juan's house and property violated the Fourth Amendment because the warrant was not supported by probable cause, officers did not execute the warrant on the required terms, and officers seized property not specified in the warrant.

The Fourth Amendment of the United States Constitution serves to protect "against unreasonable searches and seizures" and further requires that no search warrants be issued except those "particularly describing the place to be searched and the persons or things to be seized." 4th Amend, U.S. Const. The Eighth Circuit has held that "The language of a search warrant must describe the items to be seized with sufficient particularity." *United States v. Lowe*, 50 F.3d 604, 607 (8th Cir. 1995). The language utilized in a search warrant must be definite and allow the searcher to reasonably establish and identify the items authorized to be seized. *United States v. Saunders*, 957 F.2d 1488, 1491 (8th Cir. 1992), *Steele v. United States*, 267 U.S. 498, 503-04, 45 S. Ct. 414, 69 L. Ed. 757 (1925). When such standards are not met, the Court, being fully advised in the premises, must consider all evidence obtained from the search and seizure to be "inadmissible fruits", (*Wong Sun v. United* States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963)) and such evidence must be suppressed from use against Defendant.

The Supreme Court of the United States has held that "probable cause exists where the facts and circumstances within the officer's knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief […] that a crime is being committed." *Brinegar v. United States*, 338 U.S. 172-74 (1949). Further, "reasonable suspicion" is present when an officer is aware of specific and objective facts that *reasonably* warrant suspicion that a crime is being committed. *United States v. Givens*, 763 F.3d 987, 989 (8th Cir.

2014) (emphasis added). Mere affirmance or belief of suspicion is not enough." *Nathanson v. United States*, 290 U.S. at 47, 54 S. Ct. at 13.

Here, the warrant was not supported by probable cause. The affidavit supporting the warrant consisted primarily of general information regarding how computers function, how Facebook operates, and what Agent Burger believed to be common characteristics of child pornographers. The portion relating to Juan was small by comparison to this generic information and indicated that due to information which had passed through two prior parties (Facebook and NCMEC), the Agent believed Juan might be in possession of a video of child pornography. Although Agent Burger was able to verify numerous facts tying Juan to the residence such as his IP address and the household member's cars, the main facts tying Juan to the video came through Facebook and NCMEC.

Additionally, officers did not properly execute the warrant. The warrant specified that officers were to conduct the search "immediately," yet officers waited two days before performing the search. Officers also seized an iPhone belonging to Catarina Pablo, Juan's wife, even though the warrant was specific to Juan and to items in the house as they related to his suspected possession of child pornography. Lastly, agents did not knock and announce themselves before executing the search warrant, despite neither seeking nor receiving authorization for a no-knock search warrant. Although this alone cannot lead to suppression of evidence, *see Hudson v. Michigan*, 547 U.S. 586 (2006), this, in conjunction with the aforementioned violations, demonstrates the agents lack of good faith in executing the warrant on the terms provided.

Lastly, the search and seizure of Defendant's possessions was in violation of Defendant's Fourteenth Amendment right to due process. The Due Process Clause of the Fourteenth Amendment ensures the legality of ordinary processes of law. This Amendment also echoes the sentiments of the Fifth Amendment by restating that no individual shall be "deprived of life,

liberty or property without due process of law." 14th Amend. U.S. Const. The Due Process Clause of the Fourteenth Amendment was also established to "prevent irrational or arbitrary actions of government officials." *Moran v. Clarke*, 296 F.3d 638 (8th Cir. 2002).

## IV.    CONCLUSION

For the foregoing reasons, the Defendant prays that the Court suppress and exclude from use against the Defendant any all evidence obtained as a result of the statements made by the defendant on January 18, 2019, and May 9, 2019, and the search and seizure of Defendant's home, ███████ ███████████████, Iowa, on January 18, 2019, resulting in the seizure of an Apple iPad tablet, two cellular iPhones, and a Sony camera.

DATED this 5th day of July, 2019.

DIEGO FELIPE JUAN, Defendant,

By:    *s/Stuart J. Dornan*
STUART J. DORNAN, #A0011658
KATE O. RAHEL, #A0012352
Attorney for Defendant
Dornan, Troia, Howard,
Breitkreutz & Conway, PC LLO
1403 Farnam Street, Suite 232
Omaha, Nebraska 68102
(402) 884-7044 (phone)
(402) 884-7045 (fax)
stu@dltlawyers.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on July 5, 2019, I electronically filed the foregoing document with the Clerk of the District Court using the CM/ECF system which sent notification of such filing to the following:

  Timothy T. Duax, Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

  N/A

            *s/Stuart J. Dornan*
            STUART J. DORNAN, #A0011658